1
2
3
4
5          UNITED STATES DISTRICT COURT
6             DISTRICT OF NEVADA
                    * * *
7   JHONNY DARIO LEMUS,                )
                                       )
8                 Plaintiff,           )        2:14-cv-01381-JCM-NJK
                                       )
9   vs.                                )
                                       )
10  ROBERT JAMES OLAVESON, et al.      )           **O R D E R**
                                       )
11                Defendants.          )
    _____)

12

13          Pending before the Court is Defendants' Motion for Sanctions for Plaintiff's Spoliation of

14  Evidence and Failure to Comply with Fed.R.Civ.P. 26.  Docket No. 16. The Court has considered

15  Defendants' Motion, Plaintiff's Response, Plaintiff's Errata, and Defendants' Reply.  Docket Nos.

16  16, 17, 19, 21.   The Court has also considered the evidence adduced at the January 28, 2015,

17  evidentiary hearing, supplemental briefing filed by the parties, and the parties' oral arguments before

18  the Court.  Docket Nos. 30, 37, 38, 39, 40, 41, 43, 44.

19  **I.     BACKGROUND**

20          This is a personal injury action arising out of a motor vehicle accident that occurred on

21  January 14, 2013.  Docket No. 1-2, at ¶¶ 4-11.  According to the Complaint, Defendant Robert

22  Olaveson failed to slow down for traffic and collided into the back of Plaintiff's car.  *Id.*, at ¶ 10.

23  As a result of the accident, Plaintiff alleges that he sustained significant injuries and "continues to

24  incur emotional distress, pain and suffering, loss of enjoyment of life, loss of household services, lost

25  wages, lost earning capacity, medical expenses, and future medical expenses."  *Id.,* at ¶ 11, 17.  On

26  August 7, 2014, Plaintiff filed the instant action in the District Court for Clark County, Nevada.  *Id.*

27  Thereafter, Defendants removed the case to this Court.  Docket No. 1.

28  . . . .

1    On October 7, 2014, the Court approved the parties' Discovery Plan and Scheduling Order.

2    Docket No. 15.  On January 13, 2015, the Court granted the parties' request to extend certain

3    discovery deadlines.  Docket No. 28.  Discovery is set to close on April 30, 2015.  *Id.*, at 3.  The

4    deadline for expert disclosures expired on March 2, 2015, while the instant motion was pending

5    before the Court.  *Id.*

6    On December 12, 2014, Defendants filed the instant motion for sanctions.  Docket No. 16.

7    Defendants argue that defense counsel had no notice that Plaintiff was recommended for surgery.

8    *Id.*, at 3.  Thus, defense counsel claims that Plaintiff underwent spinal stimulator surgery without

9    giving prior notice to defense counsel.  *Id.*  Defendants claim this surgery caused Plaintiff's back to

10   change materially and, therefore, constitutes an act of willful spoliation, as Defendants would have

11   conducted an IME had they known that the condition of Plaintiff's back would be changed.  *Id.*

12   Additionally, Defendants state that Plaintiff violated Rule 26[1] by failing to identify Dr. Cash, or his

13   medical practice in his initial disclosures, and by only producing medical records that made it appear

14   as if Plaintiff had not treated with any physician, including a pain management physician, since

15   March 2014.[2]  *Id.*, at 13, 18-19.  Defendants submit that the records Plaintiff disclosed showed that,

16   eight months prior to the initial disclosures, Plaintiff had undergone a surgical evaluation with Dr.

17   Kabins that did not result in a surgical recommendation.  *Id.*, at 12.  As a result, Defendants did not

18   request an independent medical examination ("IME") of Plaintiff.  Defendants contend that they

19   would have requested an IME had they known that surgery was imminent.  *Id.*, at 13.

20   On December 29, 2014, Plaintiff responded to Defendants' motion.  Docket No. 17.  Plaintiff

21   represents that Defendants were informed both before and after litigation commenced that Plaintiff

22   was planning on undergoing future surgery for his pain.  *Id.*, at 3.  Plaintiff states that the notice of

23   his future surgery was documented in the following Court documents: the Complaint (Docket No.

24   1-2, ¶ 17); the notice of removal (Docket No. 1, at 2); and the Discovery Plan and Scheduling Order

25   (Docket Nos. 14 and 15, at 2).  Plaintiff further represents that his counsel orally informed defense

26

27   [1] Unless otherwise specified, references to "Rules" refer to the Federal Rules of Civil Procedure.

28   [2]Plaintiff provided his initial disclosures on October 28, 2014.  Docket No. 16, at 18, n.9.

1   counsel that Plaintiff would be undergoing future surgery.  Docket No. 17, at 6.  Additionally,

2   Plaintiff submits that no spoliation has occurred because the implantation of the spinal cord

3   stimulator has not modified his spine, and that an IME conducted with the stimulator turned off

4   would be exactly the same as an IME conducted prior to the implant of the stimulator.  *Id*., at 9, 18.

5          Plaintiff submits that he has complied with the requirements of Rule 26.  *Id*., at 20.  Plaintiff

6   states that "[m]ost importantly, the FRCP 26(a) disclosure requirements only extend to documents

7   and witnesses the parties are actually aware of at the time the disclosure is made.  They do not extend

8   to witnesses the parties are unaware of at the time of those initial disclosures."  *Id*., at 20.  Plaintiff

9   therefore states that he listed all providers with whom he had treated at the time the initial

10  disclosures were disclosed, on October 28, 2014.  *Id*., at 21.  According to Plaintiff, he had not yet

11  been referred to Dr. Cash at that time; therefore, Dr. Cash did not need to be in the initial disclosures,

12  and no violation of Rule 26(a) occurred.  *Id*.  Plaintiff further submits that he supplemented his

13  disclosures in a timely manner.  *Id*., at 22.  In support of this contention, he states that counsel

14  disclosed Dr. Cash to Defendants within 30 days of receiving notice that Plaintiff had been referred

15  to him.  *Id*.  Finally, Plaintiff argues that his actions are substantially justified and that there is no

16  prejudice to Defendants.  *Id*., at 23-25.

17         On January 8, 2015, Plaintiff filed an errata to his response.  Docket No. 19.  In the errata,

18  Plaintiff states that his response incorrectly stated that, as of the date of Plaintiff's initial disclosure,

19  Plaintiff had not treated with Dr. Cash.  In fact, Plaintiff was first seen by Dr. Cash on August 27,

20  2014.  *Id*., at 2.  Plaintiff represents that he had previously disclosed to Defendants that Plaintiff first

21  saw Dr. Cash on November 12, 2014, in his supplement to his initial disclosures.  *Id*., at 3.  Finally,

22  Plaintiff represents that his counsel first learned that he had seen Dr. Cash in August on or about

23  January 5, 2015, when Dr. Cash's office e-mailed all of his billing and medical records to counsel.

24  *Id*., at 2.

25         On January 8, 2015, Defendants filed their reply.  Docket No. 21.  The reply asserts that the

26  surgery statement in the Joint Discovery Plan was put in solely because of Plaintiff's counsel's

27  unilateral representation that Dr. Kabins would almost certainly recommend Plaintiff for lumbar

28  fusion, and that Plaintiff would undergo such surgery.  *Id*., at 3.  After the Joint Discovery Plan was

filed, however, Plaintiff produced Dr. Kabins' records to Defendants, and the records did not contain a surgical recommendation. *Id*., at 4. Therefore, Defendants state, they were unaware of any potential upcoming surgery. *Id*., at 5-6. Defendants further submit that the affidavits submitted by Plaintiff's counsel with their response are misleading and inaccurate. Id., at 6-11. Defendants also dispute the assertion of Dr. Cash that the stimulator does not change the spine and that a post-stimulator IME would be the same as a pre-stimulator IME. *Id*., at 11. They present the declaration of Dr. Jeremy Lipshutz, and contend that an IME "is not, therefore, necessarily the same after implantation of a spinal cord stimulation system (even if the system is turned off prior to and during the examination) as it would have been had the spinal cord stimulation system never been implanted." *Id*., at 11-12.

Defendants submit that Plaintiff violated Rule 26(a) by only disclosing medical records during the initial disclosures that indicated Plaintiff had not treated for several months. Additionally, Defendants point out that Plaintiff commenced treatment with Dr. Cash on August 20, 2014, two months prior to the initial disclosures and, therefore, Plaintiff should have disclosed Dr. Cash. *Id*., at 12-13. Additionally, Plaintiff failed to disclose Dr. Kaplan, with whom Plaintiff treated in December 2013. *Id*., at 14. Defendants also take issue with Plaintiff's reasoning that he does not need to disclose providers until his counsel is aware of them. "Taking plaintiff's logic one step further, what is to stop attorneys in the future from intentionally ignoring all aspects of his or her clients' medical care, disclosing no records or information concerning the same until shortly before discovery cutoff, and then excusing these actions by claiming a lack of awareness?" *Id*. Defendants submit that, "[w]hile this premise is indeed ridiculous, such conduct would technically be justified under the logic adopted by plaintiff's counsel." *Id*. Defendants further note that Plaintiff's first supplement, on December 29, 2014, contained records ranging from December 11, 2013 to September 9, 2014 - all dates before the initial disclosures were disclosed. *Id*., at 15. Therefore, Defendants submit that Plaintiff violated his Rule 26(e) duty to supplement. *Id*., at 15-16. Defendants request both spoliation sanctions and attorney fees and costs. *Id*., at 18.

The Court set an evidentiary hearing for January 28, 2015, and ordered the parties to file a joint pre-hearing brief. Docket Nos. 23, 25, 27. The parties filed the joint pre-hearing brief on

1   January 20, 2015.  Docket No. 29.  Plaintiff listed the following witnesses: (1) Ramzy Ladah; (2)

2   Anthony Ashby; (3) Kristian Lavigne; (4) Andrew Cash, M.D.  *Id.*, at 1.  Defendants listed the

3   following witnesses: (1) Joseph Chu; (2) Kym Cushing; (3) Jeremy Lipshutz, M.D.  *Id.*, at 2.

4          At the January 28, 2015, hearing, the Court granted Plaintiff's request to continue the portion

5   of the hearing regarding the attorney representations, as well as both parties' request to proceed with

6   the portion of the hearing regarding expert testimony.  Docket No. 30.  Dr. Lipshutz testified for

7   Defendants and Dr. Cash testified for Plaintiff.  *Id.*  The Court granted Defendants' request for

8   supplemental briefing regarding an article that Plaintiff admitted into evidence, and allowed

9   Defendants to file any supplemental briefing no later than February 4, 2015, with Plaintiff's response

10  due no later than February 6, 2015.  *Id.*  The Court continued the evidentiary hearing to February 9,

11  2015.  *Id.*  On January 30, 2015, the Court vacated the February 9, 2015, hearing pending the Court's

12  review of any supplemental briefing.  Docket No. 36.

13         On February 4, 2015, Defendants filed their supplemental brief.  Docket No. 37.  They argue

14  that the article presented by Dr. Cash during his testimony (Plaintiff's Exhibit 1) lacks "necessary

15  significance to sway the Court's analysis in either direction."  *Id.*, at 3.  Defendants further contend

16  that Dr. Cash's testimony is undermined by medical literature and Plaintiff's treatment records.  They

17  attach an article from the Korean Journal of Pain that reports that 30-40% of spinal cord stimulator

18  procedures result in post-operative complications.  *Id.*, at 4.  Additionally, Defendants attach

19  Plaintiff's post-stimulator pain diagrams, which they state show that Dr. Cash's testimony was

20  inaccurate.  *Id.*, at 4-5.

21         On February 6, 2015, Plaintiff filed a response to Defendants' supplemental brief.  Docket

22  No. 39.  Plaintiff submits that the article marked as Exhibit 1, when reviewed in the context of

23  Defendants' spoliation claims, makes it even clearer that Defendants' claims have no merit.  *Id.*, at

24  2.  Plaintiff states that the testimony of both experts supports his argument that no spoliation

25  occurred.  *Id.*  Plaintiff submits that the pain relief from a stimulator disappears a day after the

26  stimulator is turned off.  *Id.*, at 4-5.  Plaintiff states that no complications occurred in his case that

27  could affect an IME, and that Dr. Lipshutz's testimony was speculative and did not relate to this

28  particular case.  *Id.*, at 5.  Plaintiff submits that the articles presented in Defendants' supplemental

1  briefing are also speculative and do not relate to this case.  *Id.*  Finally, Plaintiff contends that Dr.

2  Lipshutz does not perform IMEs and cannot reliably testify as to whether the stimulator in the instant

3  case would affect an IME, and that Dr. Cash, who treated Plaintiff, unequivocally testified that no

4  complications occurred.  *Id.*, at 6-8.

5          On February 11, 2015, Defendants objected to Plaintiff's response to the supplemental

6  briefing.  Docket No. 40.  Defendants submit that Plaintiff's response asserts arguments and raises

7  issues "well beyond the scope of the Court's January 30, 2015, order."  *Id.*, at 2.  Defendants contend

8  that Plaintiff used the opportunity for supplemental briefing as a forum to argue the motion, as

9  opposed to staying within the scope of the Court's order.  *Id.*

10         On the same date, Defendants filed a supplemental reply.  Docket No. 41.  Defendants submit

11  that Plaintiff's pain records cannot be reconciled with Dr. Cash's testimony and medical records.

12  Id., at 3-4.  The pain records show that, despite reprogramming of the stimulator, Plaintiff continued

13  to suffer back pain.  *Id.*  Defendants contend that the pain diagrams demonstrate that Plaintiff "has

14  likely experienced at least *some* of the post-operative pains and complications associated with this

15  particular procedure, as described by Dr. Lipshutz to this Court and as further corroborated by the

16  medical literature on file herein."  *Id.*, at 4-5 (emphasis in original).

17         On February 12, 2015, Plaintiff objected to Defendants' reply brief.  Docket No. 43.  Plaintiff

18  submits that the Court's order allowed a supplemental briefing and response, but no reply.  *Id.*, at

19  2.  Plaintiff therefore asks the Court to strike Defendants' reply as a rogue pleading.  *Id.*[3]

20         On February 11, 2015, the Court issued an order informing the parties that the Court had

21  determined that no further evidentiary hearing was necessary on the spoliation issue.  Docket No.

22  42.  The Court set a hearing for oral argument on Defendants' motion for February 27, 2015.  *Id.*

23  . . . .

24  . . . .

25  . . . .

26

27         [3]The arguments to which both parties objected were later brought before the Court during
   oral argument on this motion.  Docket No. 44.  The Court, therefore, overrules both parties' written

28  objections at Docket Nos. 40, 43.

1

## II.        EVIDENCE ADDUCED AT JANUARY 28, 2015, HEARING

2       Defendants called Dr. Jeremy Lipshutz, who testified first about his credentials. Dr. Lipshutz

3    graduated from medical school in 2003, and is board certified in, *inter alia*, pain medication.

4    Hearing Transcript, at 8.  He has practiced medicine in Las Vegas for approximately five years.  *Id*.,

5    at 9.  Dr. Lipshutz testified that he has had the occasion to use spinal cord stimulators in his practice,

6    and that they are devices used to treat chronic pain by sending electrical signals through the body.

7    The electrical signals generate a tingling in the patient's body, which overcomes the feeling of pain.

8    *Id*., at 10.  Dr. Lipshutz testified that, before a permanent spinal cord stimulator is implanted in a

9    patient's body, the patient first goes through a trial to determine if the stimulator will help him or

10   her.  The electrical wires are threaded into the epidural space in the patient's spinal column, and the

11   leads are secured to the skin.  The wires and the generator pack are external to the patient's body

12   during the trial.  The trial can last anywhere from three to ten days.  *Id*., at 10-11.

13       If the trial is successful, Dr. Lipshutz testified, a permanent spinal cord stimulator is

14   implanted in the patient.  *Id*., at 12.  Dr. Lipshutz testified that the stimulator can be implanted in one

15   of two different ways.  The first method - the percutaneous method - is where the stimulator is

16   implanted into the spinal space, but not the spinal cord.  *Id*., at 12-13.  Dr. Lipshutz testified that he

17   performs this type of implantation himself.  *Id*., at 14.  In the second method - the surgical method -

18   the paddle of the stimulator is implanted into the spinal cord, which requires a laminotomy - the

19   removal of a portion of the lamina.  *Id*., at 13.  Dr. Lipshutz testified that he does not perform this

20   type of implantation.  *Id*., at 14.  He called this method permanent, but also testified that it can be

21   removed with minimal anatomic derangement.  *Id*., at 13.  Dr. Lipshutz further testified that "simply

22   the act of putting a spinal cord stimulator in place does cause some changes."  *Id*., at 16.  In the

23   surgical method, where the small piece of bone is removed, a patient can have "derangement of that

24   segment of the spine, and [a patient] can have pain in that area on those joints."  *Id*.

25       Dr. Lipshutz testified that both methods involve the tunneling of wires through the patient's

26   body, and the implantation of the generator pack in the patient's body, generally in the buttocks area.

27   *Id*., at 19-20.  The generator can be turned on or off with a hand-held device.  *Id*., at 21.  Sometimes,

28   after the device is turned off, patients experience the device's pain-relieving effects for some period

1   of time, though these effects cannot be medically explained.  *Id.*, at 22-24.  Dr. Lipshutz testified

2   that, in his training and experience, post-implantation pain in the facet joints is fairly common; pain

3   from the tunneling is rare; and pain at the generator site is very common.  *Id.*, at 24.  Dr. Lipshutz

4   testified that the pain could last for a matter of hours, days or much longer, and that this pain causes

5   biomechanical changes in patients.  *Id.*, at 18, 24.  Further, Dr. Lipshutz testified that an examination

6   of a patient conducted after a stimulator has been implanted in the patient could be the same as a pre-

7   implant examination, or it could be different.  Since all patients are different, it would be impossible

8   to know in advance.  *Id.*, at 37-38.  Dr. Lipshutz testified that he has been involved in hundreds of

9   stimulator trials, and he has personally implanted dozens of stimulators.  *Id.*, at 14, 32.

10   Dr. Lipshutz testified that he has never conducted nor observed an IME.  *Id.*, at 39-40.  He

11   testified that he did not review any medical records relating to Plaintiff in the instant case, including

12   Dr. Cash's records; he does not know what type of stimulator was implanted into Plaintiff; and he

13   has no opinion as to the appropriateness of the stimulator in the instant case.  *Id.*, at 29-31, 38.

14   Further, Dr. Lipshutz testified that he cannot testify whether the stimulator in this case has changed

15   Plaintiff's physical makeup.  While there could be a change in Plaintiff, Dr. Lipshutz testified that

16   he cannot say to a reasonable degree of medical certainty whether there has or has not been a change

17   to Plaintiff as a result of the stimulator implantation.  *Id.*, at 40-41.

18   Plaintiff called Dr. Cash, who also testified initially about his credentials.  After graduating

19   from medical school, Dr. Cash completed a residency in orthopaedic surgery.  He completed a

20   fellowship in spine surgery, and is a board-certified orthopaedic surgeon.  *Id.*, at 49-50.  Dr. Cash

21   testified that he has performed hundreds of IMEs, over a ten-year period of time, on behalf of both

22   plaintiffs and defendants.  *Id.*, at 64.  Dr. Cash testified that he has surgically implanted spinal cord

23   stimulators for almost ten years, and has been identified as a teaching surgeon who teaches other

24   surgeons how to implant the stimulators.  *Id.*, at 50.  Dr. Cash testified that he has implanted

25   approximately 100 stimulators, and that when he does so, he typically removes about 1 mm deep and

26   8-10 mm wide of a lamina in the thoracic spine in order to implant the paddle.  He separates a small

27   ligament from its connection to the lamina and, after he has implanted the paddle in the lamina, he

28   uses a portion of that ligament to suture the device to the lamina.  Id., at 51-55, 71.  When he

1    implants a stimulator, Dr. Cash testified, the structure of the lumbar spine remains untouched, and

2    the biomechanics of the lumbar spine are unaffected. *Id.*, at 55, 90.[4]

3          Dr. Cash testified that patients often suffer pain at the site of the incisions and that, as a

4    result, he implants pain pumps for 2-3 days.  He testified that incisional pain is usually gone within

5    10-14 days of the procedure. *Id.*, at 56-57.  Further, if the stimulator is on a nerve root, a patient can

6    have pain at his or her rib cage. *Id.*, at 57. Dr. Cash testified that, when a stimulator is turned off,

7    its pain-relieving activity can last for hours, or for days at the most. *Id.*, at 62.  Therefore, he

8    testified, he instructs patients to turn their stimulators off 2-3 days prior to undergoing an IME. *Id.*,

9    at 63. Dr. Cash testified that an IME can then be performed as if the stimulator is not even present.

10   He testified that he has performed IMEs on patients who have implanted stimulators and that, when

11   the stimulator is turned off, it does not impair the IME or change the patient's biomechanics. *Id.*,

12   at 69. Dr. Cash further testified that Plaintiff in the instant case had no complications that would

13   make his physical condition any different for a post-stimulator IME than for an IME performed

14   before placement of the stimulator. *Id.*, at 63-64, 68.

15         Dr. Cash testified that he first saw Plaintiff on August 20, 2014, and that Plaintiff presented

16   with lumbar pain that radiated to his extremities. *Id.*, at 67, 73.  Dr. Cash determined that Plaintiff

17   was a good candidate for a spinal cord stimulator and referred him to another doctor for a trial. *Id.*,

18   at 91. Dr. Cash testified that the trial reduced Plaintiff's pain significantly. *Id.*, at 88.  Therefore,

19   on November 24, 2014, Dr. Cash surgically implanted a spinal cord stimulator into Plaintiff. *Id.*, at

20   83-84.

21         Dr. Cash has handled Plaintiff's treatment on a lien basis the entire time he has treated him,

22   and has been aware that Plaintiff is represented by an attorney. *Id.*, at 73-74. Dr. Cash testified that,

23   in cases such as this one, he "usually" dictates a note within a day or two after the initial evaluation

24   of the patient.  His note is then provided to doctors and/or attorneys. *Id.*, at 74.  Dr. Cash identified

25

26         [4]Dr. Lipshutz also testified that the laminotomy occurs in the thoracic spine, not the lumbar
     spine.  *Id*, at 46.  He testified, however, that mechanics altered in the thoracic spine can alter
27   mechanics in the lumbar spine, by causing issues such as knee pain.  *Id*.  He further testified that he
     does not know if the mechanics of Plaintiff's lumbar spine were altered as a result of the
28   implantation of the stimulator.  *Id.*, at 46-47.

Defendants' Exhibit A as a patient referral generated by his office on August 20, 2014, regarding Plaintiff. *Id*., at 75-76. The exhibit shows that, in the space for insurance, Dr. Cash's office put "Law office of Kristian Lavigne." *Id*., at 76. Dr. Cash further identified Defendants' Exhibit B as the pre-surgical order generated by his staff in response to his request for the implantation of Plaintiff's permanent spinal cord stimulator. *Id*., at 77. Exhibit B lists Plaintiff's primary insurance policy number as attorney lien, and insurance company as Law Office of Kristian Lavigne and Associates. Id., at 78.

Dr. Cash testified that he has evaluated Plaintiff multiple times, both before and after he implanted the spinal cord stimulator. *Id*., at 65, 68. He further testified that the permanent stimulator, like the trial, has reduced or eliminated Plaintiff's pain complaints. *Id*., at 68-69, 83, 88. Dr. Cash testified that Plaintiff sustained no biomechanical changes to his lumbar spine from the thoracic implantation of the spinal cord stimulator. *Id*., at 64, 69, 93-94.

**III.   DISCUSSION**

**A.   Credibility of Witnesses**

The Court ordered an evidentiary hearing because the facts presented in the parties' briefing contradicted each other. "The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes. Rather, live testimony is the bedrock of the search for truth in our judicial system." *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012). "[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity - or lack thereof." *Oshodi v. Holder*, 729 F.3d 883, 892 (9th Cir. 2013) (internal citation omitted). *See also United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility").

During the evidentiary hearing in this matter, the Court had the opportunity to listen to the testimony of both witnesses, to observe and evaluate each witness' demeanor while testifying, and to weigh each witness' credibility. Having done so, the Court finds that both Dr. Lipshutz and Dr. Cash testified credibly as to the matters at hand. The Court therefore gives equal weight to the

1   testimony of both doctors.

2       **B.      Spoliation of Evidence**

3       Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or

4   the failure to preserve property for another's use as evidence in pending or reasonably foreseeable

5   litigation."   *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002).

6   "[Parties] engage in spoliation of documents as a matter of law only if they had 'some notice that the

7   documents were potentially relevant' to the litigation before they were destroyed."   *Id*.   Therefore,

8   the duty to preserve begins when a party reasonably should have known that the evidence is relevant

9   to anticipated litigation.   *See In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D.Cal. 2006).   Moreover,

10  a spoliation remedy requires some degree of culpability. *Id*. at 1078.   Specifically, prior to imposing

11  sanctions, the court must first make a finding of fault.   *Holiday v. Am. Cas. Co. of Reading, PA*, 2013

12  WL 1955561 (D. Nev. May 10, 2013) (*citing Silvestri v. General Motors Corporation,* 271 F.3d 583,

13  590 (4th Cir. 2001)).   Then, the court should fashion a remedy which serves "the prophylactic,

14  punitive, and remedial rationales underlying the spoliation doctrine."   *Id*. (*quoting West v. Goodyear

15  Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)).

16      Two sources of authority exist under which the Court can sanction a party for spoliation of

17  evidence - the Court's inherent authority or Rule 37.   *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958

18  (9th Cir. 2006).   Additionally, the Court applies federal law when addressing issues of spoliation of

19  evidence.   *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).   The Court has "inherent

20  discretionary power to make appropriate evidentiary rulings in response to the destruction or

21  spoliation of relevant evidence.   *Id*.   Courts may sanction parties responsible for spoliation of

22  evidence in three ways.   First, a court can instruct the jury that it may draw an adverse inference to

23  the party or witness responsible for destroying the evidence.   *See id*.   Second, a court can exclude

24  witness testimony based upon the destroyed evidence and proferred by the party responsible for

25  destroying the evidence.   *Id*.   Third, the court can dismiss the claim of the party responsible for

26  destroying the evidence.   Dismissal, however, is only appropriate where "a party has engaged

27  deliberately in deceptive practices that undermine the integrity of judicial proceedings."   *Leon v. IDX

28  Systems Corp.,* 464 F.3d 951, 958 (9th Cir, 2006) (*citing Anheuser-Busch, Inc. v. Natural Beverage*

- 11 -

*Distributors,* 69 F.3d 337, 348 (9th Cir. 1995).  Before imposing the "harsh sanction" of dismissal, a court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manager its dockets; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions.  *See Leon,* 464 F.3d at 958 (*citing Anheuser-Busch,* 69 F.3d at 348).

Finally, the court may award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 961.  Before awarding such sanctions, however, a court must make an express finding that the sanctioned party's behavior amounted to "bad faith." *Id.*  A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*  Where the court finds a party has acted in bad faith, any award of attorney's fees must be reasonable. *Id.*

The party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim.  *Reinsdorf v. Skechers U.S.A., Inc.,* 296 F.R.D. 604, 626 (C.D. Cal. 2013).  The party seeking sanctions based on the spoliation of evidence must establish that:  (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *Reinsdorf v. Skechers U.S.A., Inc.,* 296 F.R.D. 604, 626 (C.D. Cal. 2013).  *See also In re Napster*, 462 F.Supp.2d at 1078.  The threshold inquiry, of course, is whether or not evidence was actually altered or destroyed.

"After considering these factors, a court must then consider all available sanctions and determine the appropriate one." *Apple I,* 881 F.Supp.2d at 1138. The party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. *Reinsdorf*, 296 F.R.D. at 626; *Centrifugal Force, Inc. v. Softnet Communication, Inc.*, 783 F.Supp.2d 736, 740 (S.D.N.Y. 2011).

The mere fact that evidence has been altered or destroyed "does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 799–800 (N.D.Tex.2011).  While destruction of evidence need not be in bad faith to warrant

1   imposition of sanctions, a party's motive or degree of fault in destroying evidence is relevant to what

2   sanction, if any, is imposed.  Courts should choose the least onerous sanction corresponding to the

3   willfulness of the destructive act and the prejudice suffered by the other party.  *In re Napster*, 462

4   F.Supp.2d at 1066.

5          Here, the Court finds that Defendants have not carried their burden of proving that spoliation

6   occurred.  Their expert witness, Dr. Lipshutz, testified regarding possibilities that could occur with

7   the implantation of a spinal cord stimulator, but was unable to testify to any specifics regarding the

8   condition of Plaintiff's spine.  While the Court credits his testimony, Dr. Lipshutz admittedly had

9   neither treated Plaintiff nor seen any of Plaintiff's medical records.  Dr. Cash, who implanted the

10  stimulator in Plaintiff and has treated and examined Plaintiff, testified that the biomechanics of

11  Plaintiff's spine have not been altered as a result of the implantation of the stimulator.  Additionally,

12  Dr. Lipshutz has never conducted an IME.  Dr. Cash, who has conducted hundreds of IMEs, testified

13  that an IME of Plaintiff would not be impacted by the stimulator, as long as Plaintiff turns the

14  stimulator off at least 2-3 days prior to the IME.

15         The Court finds, based on the testimony, evidence and arguments before it, that Defendants

16  have not proven that Plaintiff's spine has been altered or destroyed, or that Plaintiff has failed to

17  preserve material evidence.  Therefore, the Court finds that spoliation has not occurred, and DENIES

18  Defendants' request for spoliation sanctions.

19         **C.    Rule 26 Violations**

20         Rule 26(a)(1)(A) provides that parties must provide initial disclosures to the opposing parties

21  without awaiting a discovery request.  The disclosures must include: (i) the name of each individual

22  likely to have discoverable information that the disclosing party may use to support its claims and

23  defenses; (ii) a copy of all documents, electronically stored information, and tangible things that the

24  disclosing party has in its possession, custody, or control and may use to support its claims or

25  defenses; and (iii) a computation of each category of damages claimed by the disclosing party.  *See*

26  Rule 26(a)(1).  In the event that a party learns that its disclosures are incomplete or inaccurate, it has

27  a duty to supplement them "in a timely manner."  *See* Rule 26(e).

28  . . . .

Case 2:14-cv-01381-JCM-NJK   Document 46   Filed 03/05/15   Page 14 of 17

When a party fails to meet its initial disclosure obligations, the Court turns to Rule 37(c) to determine whether sanctions are appropriate. Rule 37(c)(1) provides that a non-compliant party is "not allowed to use the information . . . at trial, unless the failure was substantially justified or harmless." The party facing the sanction has the burden of showing substantial justification or harmlessness. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001). Even where non-disclosure was neither harmless nor justified, however, the Court is not required in all instances to exclude evidence as a sanction. *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011). Rule 37(c)(1) also enumerates a number of other potential sanctions, including payment of reasonable expenses incurred, an order that the movant may inform the jury of the opposing party's failure, and any other "appropriate" sanction, including those listed in Rule 37(b)(2)(A)(i)-(vi).

The court has wide discretion in determining the appropriate sanction. *See Yeti*, 259 F.3d at 1106. In determining the appropriate sanction, the Court looks to five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). Moreover, where evidence of exclusion "amount[s] to dismissal of a claim, the district court [is] required to consider whether the noncompliance involved willfulness, fault, or bad faith." *R&R Sails, Inc. v. Insurance Co. Of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

An award of reasonable expenses is proper unless the failure was substantially justified. Rule 37(d)(3). Substantial justification exists where reasonable minds could differ. *See, e.g.*, *Herb Reed Enterps., Inc. v. Monroe Powell's Platters, LLC*, 2013 WL 3642531, *1 (D. Nev. July 11, 2013) (citing *American Gen. Life Ins. Co. v. Futrell*, 2012 WL 4962997, *1 (D. Nev. Oct. 16, 2012)). "A party is not excused from making its initial disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." *LT Game Int'l Ltd. v. Shuffle Master, Inc.*, 2013 WL 321659, *6 (D. Nev. Jan. 28, 2013).

. . . .

- 14 -

1    Plaintiff essentially argues that, since his counsel Mr. Ladah did not know that he had treated

2    with Dr. Cash at the time of the initial disclosures, he was not required to include Dr. Cash in his

3    initial disclosures.  The Court can find no authority to support this contention, and the Court declines

4    to adopt this rationale.  Additionally, though the Court accepts that Mr. Ladah did not know that

5    Plaintiff treated with Dr. Cash in August until January 2015, it certainly appears as if co-counsel Mr.

6    Lavigne did know.  Plaintiff treated on a lien, and Dr. Cash testified that he knew that Plaintiff was

7    on a lien during his first visit.  Additionally, Dr. Cash's referral form explicitly states that Plaintiff's

8    insurance is through Mr. Lavigne's office.  Finally, Dr. Cash testified that he dictates notes of his

9    visit and has them sent to doctors and/or attorneys.  The evidence clearly shows that Mr. Lavigne

10   should have known of Plaintiff's August visit to Dr. Cash and, if he did not, it was due to failure to

11   fully investigate the circumstances of the case.  *See LT Game Int'l Ltd.*, 2013 WL 321659, at *6.

12   Therefore, the Court finds that the failure to disclose Dr. Cash and his practice in the initial

13   disclosures was a violation of Rule 26(a).  The Court further finds that failure to timely supplement

14   the disclosures to include Dr. Cash and his medical records (records from August 20, 2014 and

15   November 24, 2014), as well as Dr. Kaplan and his medical records from December 11, 2013, until

16   December 29, 2014, was a violation of Rule 26(e).

17   The Court finds that Plaintiff's proffered reason for his violation of Rule 26 - that his counsel

18   was unaware of Dr. Cash - was not substantially justified or harmless. Fed.R.Civ.P. 37(a)(5)(A)(ii).

19   A request for discovery is "substantially justified" under Rule 37 if reasonable people could differ

20   on the matter in dispute.  *Reygo Pacific Corporation v. Johnston Pump Company*, 680 F.2d 647, 649

21   (9th Cir. 1982) (*citing* C. Wright and A. Miller, *Federal Practice and Procedure*, § 2288.  Here,

22   Defendants suffered prejudice as a result of Plaintiff's discovery violations.  They based their

23   decision not to request an IME on Plaintiff's disclosures - disclosures that made it appear as if

24   Plaintiff had treated with only one physician, and had not treated for seven months.  The litigation

25   on this violation has extended the period of time in which Defendants could see resolution to the

26   case, and has increased their expenditure.  Additionally, the Court has had to extend discovery

27   deadlines, including expert disclosures, in order to allow Defendants a fair opportunity to litigate the

28   case on its merits - all of which has interfered with the Court's ability to manage its docket and the

1  expeditious resolution of the case.  The Court, therefore, finds that sanctions are appropriate.

2        At oral argument, Defendants stated that the sanctions they requested for the Rule 26

3  violations were attorneys' fees and costs, and specifically stated that they did not request the harsh

4  sanction of dismissal.  The Court agrees that the requested sanction is proper and, therefore, grants

5  Defendants' request for attorneys' fees and costs, solely as to the portion of the motion that the Court

6  granted - Plaintiff's violation of Rule 26(a) and (e).  *See* Rule 37(b)(2)(C) (Court may order payment

7  of "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

8  substantially justified or other circumstances make an award of expenses unjust"); Rule 37(c)(1)(A)

9  (the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the

10 failure").  The Court finds that no circumstances exist that would make an award of attorneys' fees

11 and costs unjust.  Defendants shall submit their materials evidencing the fees and costs incurred that

12 relate to the Rule 26 violations only, no later than March 19, 2015.[5]  Plaintiff may file a response

13 thereto no later than March 26, 2015.

14 **IV.    CONCLUSION**

15       Based on the foregoing, and good cause appearing therefore,

16       IT IS HEREBY ORDERED that Defendants' Motion for Sanctions for Plaintiff's Spoliation

17 of Evidence and Failure to Comply with Fed.R.Civ.P. 26, Docket No. 16, is **GRANTED in part**

18 **and DENIED in part**.

19       IT IS FURTHER ORDERED that Defendants' request for spoliation sanctions is **DENIED**.

20       IT IS FURTHER ORDERED that Plaintiff shall submit to an IME with a physician selected

21 by Defendants.  The discovery deadlines that remained in this case as of March 2, 2015, are extended

22 by 60 days so that Defendants can complete an IME and disclose initial experts.  The parties shall

23 submit a joint proposed order to the Court with the new deadlines no later than March 11, 2015.

24 . . . .

25 . . . .

26

27       [5] The parties are invited to confer among themselves to determine a proper amount of
reasonable fees and costs without Court intervention, of course.  In the event they agree to an amount
28 of attorneys' fees and costs, they shall promptly file a notice with the Court so indicating.

- 16 -

1    IT IS FURTHER ORDERED that Defendants' request for sanctions for Rule 26 violations

2  is **GRANTED**.  Defendants shall submit their materials evidencing the fees and costs incurred that

3  relate to the Rule 26 violations, no later than March 19, 2015.  Plaintiff may file a response thereto

4  no later than March 26, 2015.

5    DATED: March 5, 2015.

6

7                                                    _____

8                                                    NANCY J. KOPPE
                                                     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -