# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| JHONNY D. LEMUS, | ) | |
| Plaintiff(s), | ) | Case No. 2:14-cv-01381-JCM-NJK |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ROBERT J. OLAVESON, et al., | ) | |
| | ) | (Docket No. 63) |
| Defendant(s). | ) | |

Pending before the Court is Defendants' emergency motion to disqualify counsel. Docket No. 63. Plaintiff submitted a response, and Defendants filed a reply. Docket Nos. 69, 71. This matter properly resolved without argument. *See* LR 78-1. For the reasons that follow, Defendants' motion is **GRANTED**.

## BACKGROUND

This is a personal injury action arising out of a motor vehicle accident. Docket No. 63 at 5. Defendants are represented by the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("Wilson Elser"). *Id*. Attorneys Joseph Chu, Kym Cushing, and Mark Severino have entered appearances on behalf of Defendants. *See* Docket. Plaintiff is represented both by Ladah Law Firm and Kristian Lavigne & Associates. Docket No. 63 at 5.

Mr. Chu was "intimately involved" in the defense of the instant case. *Id*. His name appears on all pleadings and motions filed by Defendants. *Id*. Defendants represent that Mr. Chu conducted and defended every deposition and formulated their defense strategy. *Id*. Further, he has appeared on Defendants' behalf at hearings and negotiated on Defendants' behalf during the April 4, 2016, Settlement Conference. Docket Nos. 44, 61.

//

On April 29, 2016, Mr. Chu left his employment at Wilson Elser. Docket No. 63 at 6. On May 2, 2016, Mr Chu began working as an attorney at Ladah Law Firm. *Id*. On May 3, 2016, Defendants' counsel contacted Plaintiff's counsel, demanding that Ladah Law Firm withdraw from the representation of Plaintiff. *Id*. Plaintiff's counsel, however, refused. *Id*. Defendants now ask the Court to disqualify Ladah Law Firm. *Id*.

**STANDARDS**

Motions to disqualify counsel are disfavored and are granted only when necessary. *Switch Comm's Grp. v. Ballard*, 2011 WL 3859725, *2 (D. Nev. Aug. 31, 2011) (citing *United States v. Titan Pacific Constr. Corp.*, 637 F.Supp. 1556, 1562 (W.D. Wash. 1986)). Disqualification motions are "subjected to particularly strict judicial scrutiny" because they create the risk of tactical misuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations and citations omitted). The party seeking disqualification bears the burden of proof. *See Takiguchi v. MRI Int'l, Inc.*, 2014 WL 3105068, *4 (D. Nev. July 7, 2014).

Disqualification is an issue of state law. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). LR 11-7(a), moreover, provides that "an attorney admitted to practice before this court must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended by the Supreme Court of Nevada."

Nevada Rule of Professional Conduct 1.9 governs former-client conflicts, and states that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.[1]

Rule 1.9(a). A conflict arises under Rule 1.9(a) where the party seeking disqualification establishes (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are the same or substantially related, and (3) that the parties are adverse. *Rebel Comm., LLC v. Virgin Valley Water Dist.*, 2011 WL 677308, *10 (D. Nev. Feb. 15, 2011) (citing *Nevada Yellow Cab Corp. v. District Ct.*,152 P.3d 737, 741 (2007)).

---

[1] Unless otherwise specified, references to "Rules" refer to the Nevada Rule of Professional Conduct.

Conflicts arising under Rule 1.9 may be imputed to the conflicted lawyer's law firm pursuant to Rule 1.10(a), which provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."

Rule 1.10(e) permits screening of lateral attorney hires to prevent imputed disqualification, but only if all three of the following conditions are met: the disqualified lawyer must not have had "a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9;" the disqualified lawyer must be "timely screened from any participation in the matter" and "apportioned no part of the fee therefrom;" and written notice must be "promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule." Rule 1.10(e). The Nevada Supreme Court has settled on a non-exhaustive list of factors to determine whether screening measures are inadequate, such as: instructions to ban the exchange of information, restricted access to files, the size of the firm, the timeliness of the screen, and the likelihood of contact between the quarantined lawyer and other firm members. *Ryan's Express v. Amador Stage Lines*, 279 P.3d 166, 172 (2012) (discussing adequacy of screening procedures for Rule 1.12 conflict). "The burden of proof is upon the party seeking to cure an imputed disqualification with screening to demonstrate that the use of screening is appropriate for the situation and that the disqualified attorney is timely and properly screened." *Id.*

**DISCUSSION**

Mr. Chu clearly has a disqualifying conflict of interest. While employed at Wilson Elser, Mr. Chu was significantly involved in the defense of this case, including filing motions and appearing at hearings and the settlement conference. Mr. Chu transferred from the firm representing Defendants in this matter to the firm representing Plaintiff in the same matter; therefore, his representation of Plaintiff would involve attacking his own work product – the preparation of Defendants' case – and a duty to use Defendants' confidential information. *SHFL Entm't, Inc. v. DigiDeal Corp.*, 2013 WL 178130, at *8 (D. Nev. Jan. 16, 2013). Plaintiff and Defendants are directly adverse in this matter. "Rule 1.9(a)

3

prevents the disloyal act of switching sides in the same or a related matter." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 1.9:103 (1990) (discussing Model Rules of Professional Conduct identical to those adopted by the Nevada Supreme Court). Mr. Chu is clearly disqualified on the basis of a former-client conflict pursuant to Rule 1.9(a).

It is undisputed that Mr. Chu's disqualifying conflict of interest is imputed to Ladah Law Firm. Docket No. 69 at 5. Nonetheless, Ladah Law Firm contends that it has adequately quarantined the taint of Mr. Chu's conflict. *Id.* It submits that it has "fully walled [Mr. Chu] off this case by blocking him access to the file" and ensured that he does not discuss the matter with other staff. *Id.* Defendants reply that "given the small size of Ladah Law Firm and Mr. Chu's intimate involvement in defending [Defendants] in this case, a firewall is impractical[.]" Docket No. 71 at 4.

Screening is clearly inappropriate for this situation. Rule 1.10(e) does not permit screening where the conflicted lawyer had "a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9." Rule 1.10(e)(1). Mr. Chu's role in defending this case was substantial. As discussed above, his name appears on the majority of substantive filings submitted by Defendants, and he negotiated on Defendants' behalf during the Settlement Conference on April 4, 2015. Ladah Law Firm fails to address, much less satisfy, the requirements of Rule 1.10(e). Accordingly, screening cannot cure this imputed conflict.

Even if screening were appropriate, however, Ladah Law Firm has not shown its screening measures are adequate. Ladah Law Firm offers only a one-sentence description of its screening procedures. Docket No. 69 at 5. It does not explain when it implemented these procedures or the means that it plans to use to defeat the transmission of confidential information. Ladah's argument, moreover, does not respond to Defendants' concern that, due to the small size of Ladah, there is a high likelihood of contact between Mr. Chu and other firm members. *See* Docket No. 63 at 9. Accordingly, Ladah Law Firm's conclusory statement fails to establish that Mr. Chu was properly screened.

Disqualification requires a balancing of the competing policies of the client's right to choose his counsel with another client's interest in avoiding disclosure. *Ryan's Express*, 279 P.3d at 170; *see also Slaughter v. Lab. Med. Consultants Ltd.*, 2010 WL 4628184, *3 (D. Nev. Nov. 5, 2010). Owing to the imputed conflict, Ladah Law Firm's continued representation of Plaintiff would be a clear violation of

the Rules of Professional Conduct. Similar to *Ryan's Express*, the perception that a party opponent could learn confidential information by hiring the opposing parties' attorney would undermine the integrity of the judicial process. *Ryan's Express*, 279 P.3d at 170 (discussing the impact of hiring third-party neutral). Although Ladah Law Firm argues that its disqualification would impact Plaintiff's right to choose his legal representation, Docket No. 69 at 5-6, the Nevada Supreme Court has held that screening is the proper means of resolving the tension between these "conflicting public policy and ethical concerns[.]" *Ryan's Express*, 279 P.3d at 170. Since Ladah Law Firm failed to demonstrate that it availed itself of these procedures, its appeal to Plaintiff's right to select his counsel is unpersuasive. Accordingly, disqualification of Ladah Law Firm is warranted.

## CONCLUSION

For the reasons discussed above, Defendants' emergency motion to disqualify is **GRANTED**. Ladah Law Firm is disqualified from the instant case.

IT IS SO ORDERED.

DATED: May 19, 2016

_____
Nancy J. Koppe
United States Magistrate Judge